129 T.C. No. 6

UNITED STATES TAX COURT

THOMAS J. AND BONNIE F. RATKE, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent[*]

Docket No. 9641-01L.                    Filed September 5, 2007.

After this Court ruled for Ps in the instant
collection case, Ps moved for an award of costs under
sec. 7430, I.R.C. 1986, and then for sanctions under
sec. 6673(a)(2), I.R.C. 1986.  In connection with these
motions, Ps seek discovery of (1) a memorandum sent by
R's initial trial counsel to R's national office at the
time R's answer was filed in the instant case and (2)
the unredacted version of the responding memorandum
sent a few months later by R's national office.  R
provided to Ps a redacted version of the latter
memorandum.  R resists discovery of the unredacted
memoranda, claiming work product doctrine privilege.

---

[*]This opinion supplements <u>Ratke v. Commissioner</u>, T.C. Memo.
2004-86.

Ps contend (1) the memoranda are not work product at the current stage of the litigation; (2) Ps are entitled to discovery even if the memoranda are work product; and (3) R waived the privilege.

1. <u>Held</u>: Both memoranda were work product when prepared for the case in chief and continue to be work product in the current stage of the litigation.

2. <u>Held</u>, <u>further</u>, having examined both memoranda in camera, we conclude that neither memorandum contains information sufficiently important to outweigh the privacy and other concerns underlying the work product doctrine.

3. <u>Held</u>, <u>further</u>, R's brief reference in the motion papers to the memoranda, but not to either memorandum's contents, does not amount to a "testimonial" use of either memorandum that would constitute an implied waiver of the work product doctrine privilege.

<u>Jack B. Schiffman</u>, for petitioners.

<u>Robert M. Fowler</u>, for respondent.

OPINION

CHABOT, <u>Judge</u>: This matter is before us on petitioners' Motion for Award of Reasonable Litigation and Administrative Costs Under Section 7430[1] as well as petitioners' Motion for Sanctions Under Section 6673(a)(2) in the instant collection proceeding. The issue for decision is whether two memoranda

---

[1] Unless indicated otherwise, all section references are to sections of the Internal Revenue Code of 1986 as in effect for proceedings commenced on the day the petition in the instant case was filed.

prepared in connection with the case in chief are protected from discovery under the work product doctrine privilege in connection with these motions.

## Background

When the petition was filed in the instant case, petitioners resided in Glendale, Arizona.

Petitioners timely filed their 1993 Federal income tax return. Petitioners showed a $9,238 tax liability for 1993. On January 9, 1996, respondent sent to petitioners a notice of deficiency that determined a $20,710 deficiency (liability of $29,948, minus the $9,238 liability shown on petitioners' tax return) and a $4,142 penalty under section 6662(a). On March 29, 1996, petitioners sent a petition to the Court (docket No. 5931-96, hereinafter sometimes referred to as the 1996 case) disputing the entire amounts of the deficiency and penalty so determined.

Also on March 29, 1996, petitioners sent to respondent a second amended 1993 tax return (Form 1040X, Amended U.S. Individual Income Tax Return) showing a tax liability of $21,893, and showing that this was $12,655 greater than the liability they had previously reported. On May 27, 1996, respondent made an additional assessment of the $12,655 shown on this Form 1040X, along with interest, and notified petitioners of this additional assessment.

The parties settled the 1996 case and, on March 13, 1997, the Court entered a decision pursuant to the parties' stipulated agreement that petitioners had a $2,931 deficiency and no "addition to tax" under section 6662(a). On May 19, 1997, respondent assessed this $2,931 deficiency and sent to petitioners a notice and demand for $21,164.

On September 20, 2000, respondent sent to petitioners a Final Notice - Notice of Intent to Levy and Notice of Your Right to a Hearing relating to 1993. On October 17, 2000, petitioners filed Form 12153, Request for a Collection Due Process Hearing. On June 28, 2001, respondent mailed to petitioners a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330. On July 31, 2001, petitioners filed their petition in the instant case. On August 7, 2001, petitioners filed an amended petition. On September 6, 2001, respondent filed the answer to this amended petition. This answer was signed by Ann M. Welhaf (hereinafter sometimes referred to as Welhaf), Acting Associate Area Counsel, and dated September 5, 2001. Welhaf also prepared a memorandum dated September 5, 2001, addressed to: Assistant Chief Counsel, Procedure and Administration, Collection Bankruptcy and Summons, Attn: Alan Levine, Chief Branch 1, CBS.

This memorandum, hereinafter sometimes referred to as the Welhaf memorandum, is summarized by respondent as follows:[2]

> This memorandum is a request for advice from Ms. Welhaf to the Office of Associate Chief Counsel (Procedure & Administration) of respondent's National Office concerning proposed legal arguments to be made at trial in the pending litigation. This request was made while this case was docketed. The author recommends several legal arguments to be made in the litigation subject to National Office approval. The memorandum also sets forth the factual background concerning this case.

Mitchell S. Hyman, Senior Technical Reviewer, Branch 1, Collection, Bankruptcy and Summons, sent a memorandum dated January 16, 2002 (hereinafter sometimes referred to as the Hyman memorandum), which is summarized by respondent as follows:[3]

> This memorandum responded to Ms. Welhaf's September 5, 2001 memorandum seeking advice concerning the proposed legal arguments to be made at trial in the pending litigation. The January 16, 2002 memorandum concluded that: (1) the IRS was authorized by section 6201(a)(1) to make an assessment pursuant to the amended return filed by petitioners; (2) petitioners were equitably estopped from contesting the validity of the assessment; (3) the stipulated settlement was a valid contract; (4) the amended return did not

_____

[2] Pursuant to the Court's order respondent provided the Welhaf memorandum to the Court for in camera inspection, together with a summary; the summary was filed and served on petitioners. After inspecting the Welhaf memorandum, the Court concludes that respondent's summary is a fair description of the Welhaf memorandum.

[3] Pursuant to the Court's order respondent provided the unredacted Hyman memorandum to the Court for in camera inspection, together with a summary; the summary was filed and served on petitioners. After inspecting the unredacted Hyman memorandum, the Court concludes that respondent's summary is a fair description of the unredacted Hyman memorandum.

constitute a waiver of the restrictions on assessment; and (5) that petitioners were not precluded by section 6330(c)(2)(B) from arguing that the assessment violated section 6213(a).

On June 13, 2002, the Court issued a notice of trial in the instant case. In due course: the instant case was continued, the instant case was again set for trial, the Court dealt with motions by both sides, the trial was held, briefs were filed, the Court issued T.C. Memo. 2004-86 holding for petitioners, and the Court entered decision "that respondent may collect only $2,931 for taxable year 1993 as set forth in the Court's March 13, 1997, decision [the decision that ended the 1996 case]."

On petitioners' motion this decision was vacated; petitioners then moved for an award of costs under section 7430 and later moved for sanctions under section 6673(a)(2). At some point, respondent provided to petitioners a redacted version of the Hyman memorandum. In connection with the latter motions, the parties have stipulated the redacted Hyman memorandum.

Petitioners now seek to discover the unredacted Welhaf memorandum and the unredacted Hyman memorandum. Respondent claims that the memoranda are protected work product and refuses petitioners' discovery requests. We directed respondent to submit these memoranda for in camera inspection along with an explanation of why the memoranda should not be disclosed to petitioners in whole or in part. (See supra notes 2 and 3.)

Both the Welhaf memorandum and the Hyman memorandum were prepared as part of respondent's counsel's efforts to prepare legal theories and plan strategy for the instant case.

Discussion

A. <u>Preliminary</u>

Petitioners want to discover the Welhaf memorandum and the unredacted Hyman memorandum. See Rules 70,[4] 72. Respondent objects to discovery of these memoranda on the ground that both memoranda are privileged. See Rule 70(b)(1). A party opposing discovery on such a ground has the burden of establishing that the information sought is privileged. <u>Ames v. Commissioner</u>, 112 T.C. 304, 309 (1999); <u>Bernardo v. Commissioner</u>, 104 T.C. 677, 691 (1995). The privilege respondent claims is the one resulting from the work product doctrine. See Rules Committee Notes, 60 T.C. 1058, 1098.

If the party opposing discovery establishes that the information sought is work product, then discovery will not be required unless the Court determines that, in the situation before it, the information sought should nevertheless be disclosed. <u>Hickman v. Taylor</u>, 329 U.S. 495, 512 (1947); <u>Ames v. Commissioner</u>, 112 T.C. at 310-311.

---

[4] Unless indicated otherwise, all Rule references are to the Tax Court Rules of Practice and Procedure.

B.  Parties' Contentions

Respondent contends that both (1) the entire Welhaf memorandum and (2) the redacted portions of the Hyman memorandum are protected from discovery pursuant to the work product doctrine.  Respondent maintains that (a) both memoranda are work product, (b) to the extent the memoranda include "fact" work product, petitioners cannot show a substantial need or undue hardship because "they are well aware of all the facts in this case", and (c) to the extent the memoranda include "opinion" work product the memoranda are "absolutely protected from disclosure" or in any event are not disclosable because petitioners "have not made a far stronger showing than the 'substantial need' and 'without undue hardship' standard".

Petitioners assert that the work product doctrine is not absolute, relying on rule 26(b)(3) of the Federal Rules of Civil Procedure.  They contend that (1) they need to have access to the Welhaf memorandum in order to determine whether "Welhaf 'cherry picked' the facts favorable to her position, and did not include facts unfavorable to her position", (2) this information would be relevant to (a) "substantial authority under I.R.C. §7430(c)(4)(B)" and (b) "sanctionable misconduct under I.R.C. §6673(a)(2)", and (3) Rule 91(a)(1) has the effect of requiring disclosure so that the parties can stipulate to the matters relevant to the motions before the Court.  Petitioners contend

that the same considerations apply to the unredacted Hyman memorandum.  Petitioners also maintain that the memoranda were prepared for "the case in chief" and are not work product with respect to "the post-decision application for litigation costs and sanctions".  Finally, petitioners maintain that respondent's efforts to use the redacted version of the Hyman memorandum "as support for its claim of substantial justification under I.R.C. §7430(c)(4)(B)" should be treated as a waiver of the work product doctrine privilege for the entire Hyman memorandum.

C.  Summary and Conclusions

Both the Welhaf memorandum and the Hyman memorandum are work product and so are privileged.  The privilege is qualified.  We examined both memoranda in camera and conclude that (1) exceptions to this privilege do not apply and (2) this privilege has not been waived.  Accordingly, neither memorandum is required to be disclosed in the present proceeding.

D.  Analysis

1.  In General

We set forth this Court's general view of the work product doctrine in P.T. & L. Construction Co. v. Commissioner, 63 T.C. 404, 407-408 (1974), as follows:

> The work product doctrine was given its first thorough exposition in the Federal courts in Hickman v. Taylor,

329 U.S. 495 (1947).[5]  In that case the Supreme Court held that materials prepared in anticipation of litigation, including witness' statements, were not subject to discovery as a matter of right because such discovery would be harmful to the orderly prosecution and defense of legal claims in adversary proceedings. "Work product," as a term of art, is used to describe such protected materials.  See <u>Hickman v. Taylor</u>, <u>supra</u> at 510.

The holding in <u>Hickman v. Taylor</u>, <u>supra</u>, has been specifically incorporated in the Federal Rules of Civil Procedure as rule 26(b)(3).  Further, the work product doctrine is given negative recognition in the Tax Court Rules of Practice and Procedure in that, even though it is not mentioned in the body of the Rules, it is dealt with in the notes of our Rules Committee to Rule 70(b). These notes state, in pertinent part, as follows:

> The other areas, i.e., the "work product" of counsel and material prepared in anticipation of litigation or for trial, are generally intended to be outside the scope of allowable discovery under these Rules, and therefore the specific provisions for disclosure of such materials in FRCP 26(b)(3) have not been adopted.  Cf. <u>Hickman v. Taylor</u>, 329 U.S. 495 (1947). [60 T.C. 1098.]

2.  <u>Are the Memoranda Work Product?</u>

The Welhaf memorandum describes Welhaf's intended arguments in defending the instant case and asks for concurrences or opinions regarding these intended arguments.  The Hyman memorandum responds to the elements of the Welhaf memorandum. The Welhaf memorandum was sent about the time respondent filed

---

[5] For a summary of the discovery evolution that led to <u>Hickman v. Taylor</u>, 329 U.S. 495 (1947), and interpretations of the law since 1947, see 8 Wright, Miller & Marcus, Federal Practice and Procedure:  Civil 2d secs. 2021-2028; that treatise and its most recent pocket part are hereinafter sometimes referred to as Wright, Miller & Marcus.

the answer in the instant case.  The Hyman memorandum was sent before the instant case was first noticed for trial.  Thus, both memoranda were prepared as part of respondent's counsels' efforts to "prepare * * * legal theories and plan * * * strategy" for the instant case.  <u>Hickman v. Taylor</u>, 329 U.S. at 511.  It follows that both memoranda are work product for the instant case.

Petitioners contend that both memoranda were prepared for "the case in chief" and are not work product with respect to "the post-decision application for costs and sanctions".  We disagree.

<u>Firstly</u>, the instant case is the same litigation for which the memoranda were prepared.  The litigation for which the memoranda were prepared will not be concluded, by entry of decision, until petitioners' motions under sections 7430 and 6673(a)(2) have been dealt with.[6]  We have not found, and petitioners have not directed our attention to, any case law indicating that one lawsuit should be segmented for purposes of determining whether a document is work product.

<u>Secondly</u>, in <u>Ames v. Commissioner</u>, <u>supra</u>, we dealt with a document prepared by the Commissioner's counsel in anticipation of criminal tax prosecution.  The taxpayer sought production of

---

[6] Rule 232(f) provides that the disposition of the sec. 7430 motion "shall be included in the decision entered in the case." Indeed, when the Court entered decision for petitioners in the instant case after issuing T.C. Memo. 2004-86, petitioners moved to vacate the decision so that they would be permitted to file their sec. 7430 motion.

that document in the civil tax proceeding that followed the criminal tax case.  We concluded in <u>Ames</u> that there was sufficient nexus between the criminal litigation for which the document had originally been prepared, and the civil litigation before this Court, so that the document qualified as work product in the civil litigation.  <u>Ames v. Commissioner</u>, 112 T.C. at 309-310.

Additionally, the Court of Appeals for the Tenth Circuit noted that "it appears every circuit to address the issue has concluded that, at least to some degree, the work product doctrine does extend to subsequent litigation."  <u>Frontier Refining Inc. v. Gorman-Rupp Co.</u>, 136 F.3d 695, 703 (10th Cir. 1998 (and cases cited therein).  Compare the foregoing with <u>Hartz Mountain Industries v. Commissioner</u>, 93 T.C. 521, 527-528 (1989), in which we concluded that the fact that "the work product at issue was prepared approximately a decade ago in distinctly different litigation" was one of three factors that collectively led us to rule that the work product doctrine privilege did not protect against disclosure in that case.  In this respect, the instant case is clearly distinguishable from <u>Hartz Mountain Industries</u>.  A fortiori, a document prepared for the same litigation, as in the instant case, qualifies as work product. See discussion in <u>Ames v. Commissioner</u>, 112 T.C. at 310 & n.4;

see also <u>Bernardo v. Commissioner</u>, 104 T.C. at 688 n.14.  See generally Wright, Miller & Marcus, sec. 2024 nn. 12-15.

We hold that both memoranda are work product for purposes of the litigation as to petitioners' motions under sections 7430 and 6673.

3.  <u>Extent of the Privilege</u>

The privilege resulting from the work product doctrine[7] is qualified; it may be overcome by an appropriate showing.  <u>Ames v. Commissioner</u>, 112 T.C. at 310; <u>Hartz Mountain Industries v. Commissioner</u>, 93 T.C. at 527 (1989).  Rule 26(b)(3) of the Federal Rules of Civil Procedure requires a showing of "substantial need" and an inability to otherwise obtain the substantial equivalent "without undue hardship"; that rule sets aside "disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation."

As to such opinion work product, the Court of Appeals for the Ninth Circuit, to which the instant case is appealable, has summarized the standards in <u>Holmgren v. State Farm Mut. Auto. Ins. Co.</u>, 976 F.2d 573, 577 (9th Cir. 1992), as follows:

> A party seeking opinion work product must make a showing beyond the substantial need/undue hardship test required under Rule 26(b)(3) for non-opinion work product.  <u>Upjohn Co. v. United States</u>, 449 U.S. 383, 401-02, 101 S.Ct. 677, 688-89, 66 L.Ed.2d 584 (1981).

---

[7] See Wright, Miller & Marcus, sec. 2025, nn. 3, 4, and 5.

The Supreme Court, however, has so far declined to decide whether opinion work product is absolutely protected from discovery.  Id. at 401, 101 S.Ct. at 688.

> *     *     *     *     *     *     *

> We agree with the several courts and commentators that have concluded that opinion work product may be discovered and admitted when mental impressions are at issue in a case and the need for the material is compelling. * * *

> Both elements are met here.  In a bad faith insurance claim settlement case, the "strategy, mental impressions and opinion of [the insurer's] agents concerning the handling of the claim are directly at issue". * * * Further, Holmgren's need for the exhibits was compelling. * * *

See generally Wright, Miller & Marcus, sec. 2026.

Petitioners contend that our Rule 91(a)(1)[8] "requires Respondent to provide Ms. Welhaf's Memorandum in its entirety so

---

[8] Rule 91(a)(1) provides, in pertinent part, as follows:

RULE 91.   STIPULATIONS FOR TRIAL

(a) Stipulations Required: (1) General:  The parties are required to stipulate, to the fullest extent to which complete or qualified agreement can or fairly should be reached, all matters not privileged which are relevant to the pending case, regardless of whether such matters involve fact or opinion or the application of law to fact.  Included in matters required to be stipulated are all facts, all documents and papers or contents or aspects thereof, and all evidence which fairly should not be in dispute. * * * The requirement of stipulation applies under this Rule without regard to where the burden of proof may lie with respect to the matters involved.  Documents or papers or other exhibits annexed to or filed with the stipulation shall be considered to be part of the stipulation.

that counsel can stipulate as to which facts were set forth and which facts were not set forth (omitted) in Ms. Welhaf's Memorandum to the Chief Counsel's Office." Respondent contends: 8. As far as Ms. Welhaf's opinion work product is concerned, it is respondent's view that such opinion work product is absolutely protected from disclosure. We reject both sides' contentions insofar as they would preclude us from conducting an appropriate balancing of interests in section 7430 and section 6673(a)(2) disputes.

We decline to adopt either side's approach. In an effort to give meaningful effect to the relevant public policies in a practical way in the instant case, we chose to conduct in camera inspections of the two unredacted memoranda. We recognize that other courses of action may be preferable in other circumstances.

4. <u>Application to This Case</u>

Having conducted an in camera review of the Welhaf memorandum and the unredacted Hyman memorandum, we conclude there is neither a substantial need to discover any of the fact-based work product nor compelling need to discover any of the opinion work product.

A redacted version of the Hyman memorandum was provided to petitioners. The redacted version of the Hyman memorandum discloses the statements about matters of fact, but not all of the legal strategies or opinions, set forth in the unredacted

Hyman memorandum. The statements about matters of fact presented in the redacted memorandum are identical to those presented in the unredacted Hyman memorandum. Petitioners have the redacted version of the Hyman memorandum, and so we conclude that petitioners are in possession of the fact-based work product. We further conclude that, as to the legal strategies and opinions, the redacted version of the Hyman memorandum and respondent's summary of the unredacted version of the Hyman memorandum (supra notes 2, 3, and 7) taken together provide a fair representation of the legal strategies and opinions in the unredacted version of the Hyman memorandum. Because (1) petitioners were provided with a fair representation of the unredacted legal strategies and opinions, and (2) the redacted portions would not impact the outcome of petitioners' motions under sections 7430 and 6673 in the instant case, we conclude that petitioners do not have a compelling need to discover this opinion work product; petitioners' desire to discover the unredacted version of the Hyman memorandum is outweighed by the protection afforded by the privacy privilege under the work product doctrine.

The Welhaf memorandum presents statements about matters of fact that are substantially similar to those presented in the redacted version of the Hyman memorandum. Because petitioners are already in possession of the equivalent fact-based work product (in the form of the redacted version of the Hyman

memorandum), we conclude that petitioners have neither a substantial need to discover the fact-based work product in the Welhaf memorandum nor an inability to obtain a substantial equivalent of this fact-based work product without incurring undue hardship.

The Welhaf memorandum suggests and analyzes various positions respondent might take in the litigation in the instant case. There is no "smoking gun" in the Welhaf memorandum establishing that respondent's position in the underlying litigation was not substantially justified and thereby possibly entitling petitioners to litigation costs under section 7430. Nor is there a "smoking gun" in the Welhaf memorandum that would prove respondent's attorney unreasonably and vexatiously multiplied the proceedings, and thereby entitle petitioners to litigation costs under section 6673(a)(2). Because the Welhaf memorandum would not impact the outcome of petitioners' motions under sections 7430 and 6673 in the instant case, we conclude there is no compelling need to discover the memorandum; petitioners' desire to discover the Welhaf memorandum is outweighed by the protection afforded by the privacy privilege under the work product doctrine.

Accordingly, we sustain respondent's contention that the work product doctrine privilege protects both memoranda from discovery.

5. <u>Waiver</u>

Petitioners contend that, even if the memoranda were privileged under the work product doctrine, respondent should be treated as having waived the privilege, because:

> To permit Respondent to withhold Ms. Welhaf's factual representation to the Chief Counsel's Office from the Ratkes would allow Respondent to use the work product doctrine as both a "sword and shield litigation tactic" in this post-decision proceeding for litigation costs and sanctions. As opined by the Federal Circuit in <u>EchoStar</u> [<u>In re EchoStar Communications Corp.</u>, 448 F.3d 1294 (Fed. Cir. 2006)]:
>
>> We recognize that the line between "factual" work product and "opinion" work product is not always distinct, especially when, as here, an attorney's opinion may itself be "factual" work product. When faced with the distinction between where that line lies, however, a...court should balance the policies to prevent sword-and-shield litigation tactics with the policy to protect work product.
>
> <u>Id.</u> at 1302.
>
> * * * *
>
> The overarching goal of waiver in such a case is to prevent a party from using the advice he received as both a sword, by waiving privilege to favorable advice, and a shield, by asserting privilege to unfavorable advice. See <u>Fort James Corp.</u> [v. Solo Cup Co.], 412 F.3d [1340] at 1349 [Fed. Cir. 2005]; [<u>In re</u>] <u>Martin Marietta Corp.</u>, 856 F.2d [619] at 626 [4th Cir. 1988]; <u>In re Sealed Case</u>, 676 F.2d 793, 818 (D.C. Cir. 1982) ("[W]hen a party seeks greater advantage from its control over work product than the law must provide to maintain a healthy adversary system[,] then the balance of interests recognized in

Hickman...shifts."). To the extent the work-
product immunity could have such an effect,
it is waived.

Id. at 1303.

In Hartz Mountain Industries v. Commissioner, 93 T.C. at

527, we summarized the waiver rules as follows:

Protection derived from the work product doctrine
is not absolute. United States v. Nobles, 422 U.S.
225, 239 (1975). Further, the work product doctrine,
like the attorney-client privilege, may be waived.
United States v. Nobles, supra. Protection afforded by
the work product doctrine to "opinion work product" may
also be waived. See In re Sealed Case, 676 F.2d 793,
811 (D.C. Cir. 1982); Coleco Industries, Inc. v.
Universal City Studios, 110 F.R.D. 688, 690-691
(S.D.N.Y. 1986).

In Hartz Mountain Industries and each of the three cited

cases therein, the relevant court (1) concluded that the

proponent of the privilege attempted to present a one-sided view

of a critical matter in dispute and (2) refused to sustain the

privilege in that setting.

In Nobles, a defendant in a criminal case was not permitted

to present testimony of an investigator unless the defendant

turned over to the prosecution those portions of the

investigator's report that related to the investigator's expected

testimony. When the defense called its investigator as a

witness, the trial court ruled that the investigator's report

(after inspection and editing in camera) would have to be turned

over to the prosecutor. The defense stated that the report would

not be turned over. Whereupon the trial court ruled that the

investigator would not be permitted to testify.  United States v. Nobles, 422 U.S. 225, 229 (1975).  The Supreme Court held that the trial "court's preclusion sanction was an entirely proper method of assuring compliance with its [disclosure] order."  Id. at 241.

In Hartz Mountain Industries v. Commissioner, 93 T.C. at 528, we ruled as follows:

> Finally, petitioner has waived the work product doctrine by making a "testimonial use" of work product materials.  See In re Sealed Case, supra at 817-818; Coleco Industries, Inc. v. Universal City Studios, supra at 691.  Petitioner submitted affidavits from its in-house counsel to support its internal position with respect to the antitrust litigation.  By offering this selective disclosure of work product to establish its intent, petitioner has waived all work product protection relevant to the same issue, and fairness requires discovery of all work product that pertains to petitioner's antitrust settlement intentions.  Coleco Industries, Inc. v. Universal City Studios, supra.

Thus, although partial disclosure is not necessarily fatal to a claim of work product doctrine privilege, a "testimonial use" of the disclosed material may result in a conclusion that in fairness the related material must be disclosed even though it would otherwise be protected from disclosure.[9]

---

[9] This has some similarity to Fed. R. Evid. 106, under which a party may interrupt another party's presentation in order to require "the introduction at that time" of certain evidence "which ought in fairness to be considered contemporaneously with" the other party's evidence.

In In re EchoStar Communications Corp., 448 F.3d 1294 (Fed. Cir. 2006), defendants to a willful patent infringement suit asserted the defense of reliance on advice of counsel. The Court of Appeals ruled:

> Work-product waiver extends only so far as to inform the court of the infringer's state of mind. * * *
>
> The overarching goal of waiver in such a case is to prevent a party from using the advice he received as both a sword, by waiving privilege to favorable advice, and a shield, by asserting privilege to unfavorable advice.

Id. at 1303.

We note that, in response to petitioners' section 7430 motion, respondent refers to the two memoranda and respondent's actions under section 6110 resulting in disclosure of the redacted Hyman memorandum. As we view it, respondent's references to the two memoranda are in the course of a recital of sequence of events. The references are not by way of a contention that the existence of the two memoranda or the text of the redacted Hyman memorandum is evidence showing that respondent's position was substantially justified, within the meaning of section 7430(c)(4)(B)(i). Petitioners have not directed our attention to any attempt by respondent to make a "testimonial use" of either of the two memoranda (Hartz Mountain Industries v. Commissioner, 93 T.C. at 528), or to use either of the two memoranda as "a sword" (In re EchoStar Communications Corp., 448 F.3d at 1303).

We conclude that respondent has not waived the work product doctrine privilege with respect to the Hyman memorandum. We do not understand petitioners to contend that respondent waived the privilege with respect to the Welhaf memorandum, except as a derivative of their contention as to the Hyman memorandum. We hold that the privilege has not been waived as to either memorandum.

6. <u>Conclusion</u>

The unredacted memoranda are privileged from disclosure under the work product doctrine privilege. Neither memorandum includes material such that the need to discover the work product is compelling. Finally, respondent has not waived the protection of the work product doctrine privilege.

<u>An appropriate order will
be issued denying petitioners'
request to discover the unredacted
memoranda</u>.[10]

---

[10] We note that the parties have stipulated the text of the redacted Hyman memorandum as a joint exhibit relating to petitioners' secs. 7430 and 6673 motions. We have concluded that respondent's references to the two memoranda in materials filed with the Court up to now do not constitute a use leading to waiver of the work product doctrine privilege.