T.C. Memo. 2007-339

UNITED STATES TAX COURT

STERLING TRADING OPPORTUNITIES, L.L.C., SENTINEL ADVISORS,
L.L.C., TAX MATTERS PARTNER, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

TOPAZ TRADING, L.L.C., SENTINEL ADVISORS, L.L.C., TAX MATTERS
PARTNER, Petitioner <u>v</u>. COMMISSIONER OF INTERNAL REVENUE,
Respondent

Docket Nos. 12361-05, 12629-05.    Filed November 14, 2007.

<u>Felix B. Laughlin</u> and <u>Mark D. Allison</u>, for petitioner.

<u>Bryan C. Skarlatos</u> and <u>Christopher M. Ferguson</u>, for

participating partner.

<u>Clare W. Darcy</u>, for respondent.

MEMORANDUM OPINION

HALPERN, <u>Judge</u>:  Respondent has moved to compel production

of documents (the motion).  Participating partner AS/EI

Investments, L.L.C. (the L.L.C.), and petitioner object.  L.L.C.

has, under seal and for in camera inspection, submitted to the Court four documents (the documents), which are at the center of the dispute, along with a memorandum in support of its and petitioner's claim of work product protection for the documents. The L.L.C. has also filed (and shared with respondent) a redacted copy of that memorandum (the memorandum).  For the reasons stated, we shall grant the motion.

### Background

The memorandum describes the documents as

> notes taken by Mr. Franco and his attorney, Morris Missry, Esq., at two meetings which took place in the latter part of 1999, between Mr. Franco and Mr. Missry, on the one hand, and representatives of BDO and/or Sentinel on the other.  The first such meeting took place on or about September 22, 1999 and the second took place on or about October 28, 1999.

With respect to the first meeting, the memorandum states:

> The purpose for having Mr. Missry accompany Mr. Franco was to allow him to advise Mr. Franco concerning the options transactions and to have him review the proposed strategy in the likely event that Mr. Franco was audited by virtue of potential losses declared as a function of having invested in the options transactions.
>
> The September 22, 1999 meeting was attended by Mr. Franco, Mr. Missry, Eric Hananel and Randy Frischer of BDO, as well as representatives from Sentinel.  * * * The purpose of this meeting was to educate Mr. Missry about the options transactions and to introduce Mr. Franco and Mr. Missry to Sentinel.

With respect to the second meeting, the memorandum states:

> The October 28, 1999 meeting was attended by Mr. Franco, Mr. Missry, Marvin Robinson, Esq. (a second attorney hired by Mr. Franco with respect to the options transaction) and Mr. Hananel.  * * *  As with the earlier meeting, Mr. Missry accompanied Mr. Franco to this meeting in order to advise Mr. Franco with respect to the investments themselves and with a view

toward an ultimate challenge of the transactions by the IRS. As with their notes from the September 22 meeting, both Mr. Missry's and Mr. Franco's notes reflect discussions concerning the tax benefits of the transactions in question and the need to anticipate an IRS challenge through  REDACTED  .

## Arguments of the Parties

L.L.C. argues that the documents were prepared in anticipation of litigation and, for that reason, are entitled to work product protection. L.L.C. argues: "The term 'litigation' * * * has been construed expansively so as to encompass virtually any type of adversarial forum, including an IRS audit." Also: "As the above facts demonstrate, the prospect of an ultimate dispute with the IRS was an ever-present consideration in the minds of Mr. Franco and Mr. Missry at the time of the September 22 and October 28, 1999 meetings."[1] L.L.C. recognizes that work product may be subject to discovery if the information is essential to the opponent's case and is otherwise unavailable. L.L.C. argues:

> This is plainly not the case here. As noted above, the September 22 and October 28 meetings for which Respondent now seeks Mr. Franco's and Mr. Missry's notes were attended by several witnesses. One of those witnesses, Marvin Robinson, Esq. submitted to an informal interview with Respondent. Another witness, Eric Hananel, is being deposed by respondent in June. In addition, Respondent has had discussions with Mr. Missry himself about arranging an informal interview. And, of course, Respondent will have the opportunity to question Mr. Franco about these meetings during any ultimate trial in this case.

---

[1] L.L.C. identifies Mr. Franco as an investor in Sterling Trading Opportunities, L.L.C., and Topaz Trading, L.L.C., and as the "ultimate taxpayer whose liabilities are at issue in this case."

Respondent argues that the documents are not protected by the work product doctrine because petitioner and the L.L.C. have failed to show that litigation was anticipated by Mr. Franco or Mr. Missry at the time they wrote the documents. Respondent also argues that, assuming that the documents were written in anticipation of litigation, he has substantial need for the documents and is unable to obtain the substantial equivalent by other means. Respondent claims his substantial need is to show

> the purpose, structure, parties, and fees for the transaction, all of which relate to respondent's position that the transaction was entered into for purely tax avoidance purposes. Contrary to respondent's position, petitioner and the participating partner have alleged that Sterling Trading Opportunities and Topaz Trading were formed for an investment purpose.

Respondent bases his claim that there is no substantial equivalent for the documents on the following. He has deposed Mr. Hananel, who does not recall details about the information that was provided to Mr. Franco and Mr. Missry in September and October of 1999. Mr. Hananel did not recall attending meetings with Sentinel Advisors with respect to Mr. Franco. Respondent has spoken informally to Mr. Robinson, who could not provide details about the meetings. Respondent summarizes: "The lapse in time has caused memories to fade about the details discussed at these two meetings. There simply is no other way for the respondent to obtain the critical information contained in the contemporaneous notes of the meetings sought in the motion to compel."

Respondent adds that the L.L.C. memorandum does not claim that the documents contain the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning litigation.  Respondent argues that, even were petitioner and the L.L.C. to make that claim, he has made a highly persuasive showing of a substantial need for the documents.

## Discussion

We recognize the work product doctrine.  See Ratke v. Commissioner, 129 T.C. __, __ (2007) (slip op. at 9-10).

> If the party opposing discovery establishes that the information sought is work product, then discovery will not be required unless the Court determines that, in the situation before it, the information sought should nevertheless be disclosed.  Hickman v. Taylor, 329 U.S. 495, 512 (1947); Ames v. Commissioner, 112 T.C. at 310-311.

Ratke v. Commissioner, supra at __ (slip op. at 7).  In the Ratke case, we addressed the extent of the privilege resulting from the work product doctrine as follows:

> The privilege resulting from the work product doctrine is qualified; it may be overcome by an appropriate showing.  Ames v. Commissioner, 112 T.C. at 310; Hartz Mountain Industries v. Commissioner, 93 T.C. at 527 (1989).  Rule 26(b)(3) of the Federal Rules of Civil Procedure requires a showing of "substantial need" and an inability to otherwise obtain the substantial equivalent "without undue hardship"; that rule sets aside "disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation."  [Id. at __ (slip op. at 13); fn. ref. omitted.]

The documents, as described in the L.L.C. memorandum, and as shown by our in camera examination, contain notes taken by

Messrs. Franco and Missry at two meetings to educate them about the options transactions, including the possibility of IRS examination of the transaction. Petitioner and the L.L.C. do not claim, nor do we see, any opinion work product (i.e., "mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation"). If anything, the documents contain fact-based work product. Fact-based work product may be discovered on a showing of substantial need and the inability to obtain the substantial equivalent without undue hardship. We shall assume, without deciding, that the documents contain fact-based work product. Because we find that respondent has substantial need for the information contained in the two documents and the inability to obtain the substantial equivalent from other sources, respondent may have discovery of the documents.

Respondent claims that the documents will show the purpose, structure, parties, and fees for the transactions in question, all of which may assist respondent in proving that the transactions in question were entered into for purely tax avoidance purposes. It is a fair inference from the L.L.C. memorandum that the documents do contain information concerning the purpose, structure, parties, and fees for the transaction, or concerning at least some of those matters, and our in camera examination confirms that inference. We shall assume that a tax avoidance purpose is relevant to the cases before us, something that the L.L.C. and petitioner do not contest. Respondent claims

a substantial need for the information in the documents to prove that purpose. The L.L.C. memorandum recognizes that substantial need is one of the elements that a party must show to overcome the work product privilege. Apart from arguing the availability of substantially equivalent information from other sources, the L.L.C. memorandum does not argue that respondent lacks a substantial need for the information in the documents. Putting aside other sources, we think that respondent has shown a substantial need for the information in the documents, and we so find.

As to the availability to respondent of substantial equivalents to the documents, we think that respondent's efforts to obtain information about the two meetings from Messrs. Hananel and Robinson show the futility of relying on memory to describe the particulars, indeed, even the occurrence, of two relatively brief meetings that occurred more than 8 years ago. Petitioner and the L.L.C. do not suggest that, other than the memories of the participants, there is any substantial equivalent to the documents from which the happenings at the two meetings can be established. We agree with respondent that there is no other way for him to obtain the information contained in the documents other than to examine them.

Respondent has made an adequate showing to overcome the privilege resulting from the work product doctrine, as claimed by petitioner and the L.L.C.

On the premises stated,

<u>An appropriate order will be issued granting the motion and ordering L.L.C. to produce copies of the documents</u>.